1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

LOBB & CLIFF, LLP
GREGORY A. NYLEN (SBN 151129)
Email:  *gnylen@lobbcliff.com*
1650 Spruce Street, Suite 410
Riverside, CA 92507
Telephone: (951) 788-9410
Facsimile:  (951) 788-0766

Attorneys for Plaintiff SHUTTERSTOCK, INC.

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHUTTERSTOCK, INC., a Delaware corporation,<br><br>                 Plaintiff,<br><br>vs.<br><br>NORBERT PIKULSKI, an individual d/b/a shutterst9ck.com, shjtterstock.com, ehutterstock.com, zhutterstock.com, whutterstock.com, shutterstpck.com, sh7tterstock.com, and shutterst0ck.com; and DOES 1-10,<br><br>                 Defendants. | CASE NO. **'14CV0869 WQHNLS**<br><br>**COMPLAINT**<br><br>**[DEMAND FOR JURY TRIAL]** |

        Plaintiff Shutterstock, Inc. ("Shutterstock") files this Complaint on knowledge as to its own activities and on information and belief as to the activities of others:

### JURISDICTION AND VENUE

        1.        This is an action for cybersquatting, trademark infringement, trademark dilution, unfair competition and false designation of origin arising under the Anticybersquatting Consumer Protection Act ("ACPA"), 15 U.S.C. § 1125(d) and

Trademark Act of 1946, 15 U.S.C. §§ 1051, *et seq.*, (the "Lanham Act"), and for trademark and trade name infringement, unfair competition, and dilution under the laws of the State of California.

2.      This Court has original subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338(a) and (b); 15 U.S.C. §§ 1114, 1116, 1121 and 1128.

3.      This Court has supplemental jurisdiction over Shutterstock's claims under the laws of the State of California pursuant to 28 U.S.C. § 1367, because the state-law claims are so related to the claims over which this Court has original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

4.      This Court has personal jurisdiction over each of the Defendants because they conduct substantial, continuous, and systematic business within this District; because Defendants engaged in acts or omissions causing injury within this District; and because the claims alleged in this Complaint arise out of or relate to Defendants' forum-related activities.

5.      Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b)(2) and 1400(a) because the facts giving rise to the acts or omissions alleged herein took place in this District and because Defendants are subject to personal jurisdiction in this District.

## THE PARTIES

6.      Shutterstock is a corporation, organized and existing under the laws of the State of Delaware, having its principal place of business at 350 Fifth Avenue, 21st Floor, New York, New York 10118.  Shutterstock is also licensed to do business in the State of California and has an office in California.

7.      Upon information and belief, Defendant Norbert Pikulski ("Pikulski") is an individual residing at 12166 Cimbria Way, Lakeside, CA 92040, and conducting business throughout the State of California and within this judicial district.

8.      DOES 1-10, whose identities and addresses are presently unknown to Shutterstock, are individuals and corporate entities that, upon information and belief,

have assisted, contributed to, aided and abetted, conspired with, and/or acted in concert with Pikulski in connection with his improper activities as alleged herein. The Complaint herein will be amended, if appropriate, to include the name or names of these individuals when such information becomes available.

## BACKGROUND FACTS

### A.   Shutterstock's Valuable And Famous Intellectual Property.

9.     Founded in 2003 and headquartered in New York City, Shutterstock is a publicly traded (NYSE: SSTK), innovative technology company, operating in more than 150 countries and 20 languages. As a two-sided marketplace, Shutterstock's mission is to connect creative professionals with the best photos, vectors, illustrations and video from thousands of contributors around the world.

10.     Shutterstock is the owner of the entire right, title and interest in and to the federally and internationally registered SHUTTERSTOCK word mark (U.S. Registration No. 3,084,900) (the "Shutterstock Word Mark") in International Class 35 for the licensing of digital data (namely still images) for use in the fields of electronic and print publishing, graphic design, advertising, product packaging and interactive multimedia. The Shutterstock Word Mark was first used in commerce on February 14, 2004, was registered on April 25, 2006 and is incontestable. Shutterstock also owns all right, title and interest in and to the federally registered SHUTTERSTOCK design marks (U.S. Registration Nos. 4286040, 4286055, 4286051 and 4286050) in International Class 45 for the licensing of reproduction rights for various types of intellectual property, including, *inter alia,* photographs, film, video, advertising, graphic design, product packaging, illustrations, live performances, and certain other media. Shutterstock also owns all right, title and interest in and to federally registered marks for its brands OFFSET, SKILLFEED and BIGSTOCK (*see, e.g.,* U.S. Reg Nos. 4350110, 4442589, 4446512, 4504338, and 3924779). All common law and federally registered trademarks owned by Shutterstock are collectively referred to herein as the "Shutterstock ///

Trademarks". Shutterstock also owns a number of related domain names,[1] including, *e.g.,* shutterstock.com, shutterstock.biz, shutterstock.fr, shutterstock.jp, shutterstock.hk, and shutterstock.info.

11.     The Shutterstock Word Mark is used in connection with the licensing of photos, vectors, illustrations and videos. The Shutterstock Word Mark is world famous and known to artists, photographers, designers, producers, editors and other creators and consumers of photographic images, illustrations, vectors, and videos throughout the world. Shutterstock has invested substantial sums of money and resources to develop the Shutterstock Word Mark.

12.     Since 2004, Shutterstock has used the Shutterstock Word Mark continuously in interstate, intrastate and foreign commerce, including commerce in the State of California and in this judicial District.

13.     The Shutterstock Word Mark is a highly visible symbol of the history and quality of services Shutterstock offers. Shutterstock has widely promoted the Shutterstock Word Mark in the United States and throughout the world, and has spent millions of dollars advertising the brand. The public, customers, and the still and moving image licensing industry have come to recognize that services delivered under the Shutterstock Word Mark originate with Shutterstock exclusively.

14.     Shutterstock also exercises quality control over the use of the Shutterstock Word Mark, and devotes significant resources to protecting the Shutterstock Word Mark.

15.     As a result of Shutterstock's continuous and broad use of the Shutterstock Word Mark worldwide, the continuous and unsolicited media coverage of Shutterstock, the high degree of consumer recognition of Shutterstock's Word Mark and other intellectual property, and the millions of consumers who regularly use and enjoy Shutterstock's services, Shutterstock's Word Mark is famous within the meaning of 15

---

[1] "Internet domain name" or "domain name" means a string of alphanumeric characters used to identify a specific website on the Internet. For example, the domain name for Shutterstock's website is www.shutterstock.com (or simply "shutterstock.com").

COMPLAINT

U.S.C. § 1125(c).  In an Office Action refusing registration of a confusingly similar unrelated mark, the Patent & Trademark Office stated "Shutterstock is a leading global provider" of stock content and the Shutterstock website, www.shutterstock.com "ranks among the top 500 most viewed websites in the world." A copy of the Office Action is attached hereto as Exhibit A.

### B. <u>Defendants' Serial Typosquatting Activities.</u>

16.  Pikulski is a serial typosquatter.  A typosquatter registers an Internet domain name that is confusingly similar to a protected mark.  A typosquatter domain name may be confusingly similar to a protected mark either because it is an intentionally misspelled version of the protected mark that is similar in sight, sound or meaning (*e.g.* "shutterstpck.com") or because it incorporates the entire protected mark and adds additional characters to it (*e.g.* "shutterstocki.com").

17.  According to WhoIs reports dated as of March 19, March 26 and April 8, 2014 (copies of which are attached collectively hereto as Exhibit B),[2] Pikulski is the listed owner of the following domains: shutterst0ck.com, shutterst9ck.com, shutterstpck.com, shjtterstock.com, ehutterstock.com, zhutterstock.com, whutterstock.com and, sh7tterstock.com, (collectively, the "Typosquatter Domains"). Pikulski is also the listed owner of number of domain names that appear to typosquat on other well-known trademarks.  A copy of a WhoIs record identifying 128 such domain names owned by Pikulski as the listed owner as of March 26, 2014 is attached hereto as Exhibit C.

18.  Defendants do not use the Typosquatter Domains in connection with any bona fide offering of goods or services, or as any legitimate noncommercial or fair use. Rather, when entered into a web browser such as Internet Explorer, Google Chrome or Safari, the Typosquatter Domains (with the exception of ehutterstock.com) currently

---

[2] "WhoIs records" refer to publicly available records that provide information about the owners and registrants of domain names.  Among other things, the WhoIs record for a particular domain typically indicates who owns the domain name and which computer server hosts (*i.e.* makes available to Internet users) content available at that domain name.

resolve to the domain googpussy.com and previously, at least one of the Typosquatter Domains (shutterstpck.com) resolved to the domain ehhun.com. According to WhoIs reports dated as of March 19, 2014, Pikulski is also the listed owner of googpussy.com and ehhun.com. *See also* Exhibit B.  Googpussy.com and ehhun.com are pornographic websites offering extremely graphic and lurid videos of individuals engaged in explicit sexual activities (the "Pornography Websites").  There are no filters that would prevent a minor or anyone else from viewing this extreme content.  Printouts of pages of the Pornography Websites as of March 12, March 26 and April 8, 2014 are attached hereto as Exhibit D. Exhibit D depicts the pages of the Pornography Websites to which the Typosquatter Domains, including shutterstpck.com and sh7tterstock.com, resolve. Furthermore, as recently as April 8, 2014, the names of at least two Typosquatter Domains, ehutterstock.com and zhutterstock.com, are displayed at the top of the googpussy.com Pornography Website.  *See* Exhibit D.

19.    The Pornography Websites also offer advertising for other pornographic websites and online services.  For example, clicking on a "Premium" link at the top of the page redirects a viewer to a website entitled "Wankz" resolving at www.wankz.com, which offers "the best streaming porn" for a subscription fee of $29.95 per month.  A printout of which is attached hereto as Exhibit E.  The googpussy.com Pornography Website also has advertisements for other Internet pornography sites that charge fees that appear at the bottom of the googpussy.com Pornography Website home page, some of which change each time someone visits the site.  Examples of these advertisements can be seen at the bottom of the printout attached as Exhibit F.

20.    Shutterstock asked Pikulski to cease using certain of the Typosquatter Domains and to transfer certain of the Typosquatter Domains to Shutterstock, but Pikulski refused, and instead further demonstrated his malicious and bad intent by registering additional Typosquatter Domains in response.  Specifically, after learning about the first Typosquatter Domain, shutterstpck.com, in early March of 2014, both Shutterstock's General Counsel and Corporate Counsel demanded that Pikulski turn over

the domain.  A copy of the email from Shutterstock's Corporate Counsel to Pikulski dated March 12, 2014 is attached as Exhibit G.  Pikulski did not respond or turn over the shutterstpck.com Typosquatter Domain; instead, that same day, Pikulski registered the shutterst0ck.com Typosquatter Domain.  *See* Exhibit B.  Pikulski proceeded to register the ehutterstock.com, shutterst9ck.com, shjtterstock.com and sh7tterstock.com Typosquatter Domains between March 15 and March 23, 2014.  *See* Exhibit B.  On March 21, 2014, Shutterstock filed a complaint before the National Arbitration Forum relating to the shutterstpck.com and shutterst0ck.com Typosquatter Domains under the Uniform Domain Name Dispute Resolution Policy adopted by the Internet Corporation for Assigned Names and Numbers.  Pikulski responded by posting on the same day on his Twitter account "Fuck you Shutterstock!  Bitches!  Hoes skankz!" A copy of this posting is attached as Exhibit H.  Pikulski then registered the whutterstock.com and zhutterstock.com Typosquatter Domains on March 23, 2014.  *See* Exhibit B.

21.    Pikulski also owns a Facebook account on which he claims he is engaging in business similar to Shutterstock.  This page is publicly available at https://www.facebook.com/norbert.pikulski.  For example, on his Facebook page, Pikulski boasts about starting a "norbies.com" website, as well as ehutterstock.com, at which he will offer "stock image and vector searching," claims to have been "accepted" as a developer for "fotolias" [sic], and references joining fotolia.com, which Pikulski describes as "the world's leading stock photo agency."  Copies of printouts of relevant pages from Pikulski's Facebook page are attached collectively hereto as Exhibit I.

22.    Pikulski contacted Shutterstock on April 9, 2014 and stated that "ehutterstock specializes in absolutely free images" and referenced "shutterst0ck customers".  A copy of this email is attached hereto as Exhibit J. As of April 9, 2014, the landing page for the ehutterstock.com Typosquatter Domain displayed a title for "Image Categories" against a nude picture; the bottom of the page references the "Stock image and networking platform SYMBIOSTOCK…".    A copy of this webpage is ///

attached hereto as Exhibit K.  Prior to April 9, 2014, the ehutterstock Typosquatter Domain resolved to the Pornography Websites.

23.   As noted above, Pikulski also owns a Twitter account.  Pikulski has demonstrated extremely harassing and aggressive behavior towards Shutterstock and attempted to tarnish and harm Shutterstock's reputation in his postings on his Twitter account. For example, he has tagged Shutterstock (in the form of "#shutterstock") in extremely offensive and suggestive posts, including his response to the complaint filed by Shutterstock described above and another post in which he claims that "a friend" claims that Shutterstock photos have viruses.  Pikulski has also referenced additional typosquatting and cybersquatting domains, including shuthersuck.com, shuttersuck.com and shutterstocksucks.com, which do not appear to be active sites.  Pikulski also has made numerous references to lewd and offensive conduct, in certain of which posts he has also tagged #shutterstock[3] (*e.g.*, this post from March 27, 2014, accompanied by a picture of alcohol and illegal drugs: "What do u mean fuk ya theres drugs here... #shutterstock shut her stock up... http://googpussy.com  pic.twitter.com/KYcpJArGbI"). Copies of relevant pages from Pikulski's Twitter account, dated April 1, 2014, are attached collectively hereto as Exhibit L.

### C.   Harm to Shutterstock from Defendants' Conduct.

24.   Defendants' typosquatter schemes and use of the Typosquatter Domains as alleged above infringe on Shutterstock's famous and distinctive Word Mark, confuse the consuming public, diminish the goodwill associated with Shutterstock and its Word Mark, injure Shutterstock's reputation, interfere with Shutterstock's business, and unjustly enrich Defendants.

25.   As a result of Defendants' typosquatter schemes, the consuming public has been and is likely to be confused with respect to whether Shutterstock is affiliated,

---

[3] As used in social media, the hashtag symbol (#) is used to identify messages on a specific topic. For example, searching "#shutterstock" will identify all messages in which #shutterstock appears on a specific social media platform.

connected, or associated with Defendants and Defendants' websites, including the Typosquatter Domains and the Pornography Websites (the Typosquatter Domains and the Pornography Websites are referred to collectively herein as "Defendants' Websites").

26.    In addition, the consuming public has been and is likely to be confused as to whether Shutterstock is the source of Defendants' offers, goods, and services, and as to whether Shutterstock sponsors and approves Defendants' commercial activities.

27.    Shutterstock's distinctive and famous Word Mark has been diluted by blurring and diluted by tarnishment as a result of Defendants' typosquatter schemes.

28.    Shutterstock has suffered and continues to suffer significant harm to its reputation and goodwill, including the goodwill associated with its Word Mark, as a result of Defendants' typosquatter schemes.

29.    Shutterstock has suffered substantial damages as a result of Defendants' conduct, including damages from reduced use of Shutterstock's website, damages to the reputation and goodwill associated with Shutterstock's Word Mark, costs to investigate and combat Defendants' typosquatter schemes, and costs to respond to consumers' complaints and confusion about Defendants' typosquatter schemes.

## CLAIMS FOR RELIEF

### *FIRST CLAIM FOR RELIEF*

### CYBERSQUATTING

### (15 U.S.C.  § 1125 (d))

30.    Shutterstock realleges and incorporates by reference each and every allegation above as if fully set forth herein.

31.    Shutterstock owns the Word Mark referenced in paragraph 10 above.

32.    Shutterstock's Word Mark is famous and highly distinctive with regard to a variety of services, including the licensing of digital media.

33.    The distinctive quality of Shutterstock's Word Mark is of enormous value to Shutterstock.

///

34.   Shutterstock began using its distinctive and famous Word Mark in 2004, approximately ten years prior to Defendants' unauthorized and unlawful activities.

35.   Defendants have registered, trafficked in, and used the Typosquatter Domains that are confusingly similar to and dilutive of Shutterstock's Word Mark knowing that the Typosquatter Domain names are confusingly similar to and dilutive of Shutterstock's Word Mark.

36.   Defendants registered their Typosquatter Domains with a bad faith intent to profit from the fame and goodwill associated with Shutterstock and Shutterstock's Word Mark.

37.   Defendants engage in the conduct described in this Complaint without Shutterstock's consent or authorization. Defendants neither applied for a license nor sought permission from Shutterstock to use its Word Mark, and Defendants are not associated with Shutterstock in any way.

38.   Defendants intend to and do divert consumers from Shutterstock's online location to Defendants' Websites, which harm the goodwill represented by Shutterstock's marks by creating a likelihood of confusion as to the source, sponsorship, affiliation, or endorsement of Defendants' Websites.

39.   Defendants' Websites harm Shutterstock's reputation and the goodwill associated with Shutterstock's Word Mark by causing consumers to associate Shutterstock with the negative qualities of Defendants' Websites, including, but not limited to, the confusing and deceptive manner in which Defendants' Websites generate Internet traffic, the salacious, pornographic, confusing and deceptive content of Defendants' Websites, the misleading nature of the commercial activities carried at Defendants' Websites, the shoddy design of Defendants' Websites and the unreliable functionality of those websites.

40.   The Typosquatter Domains further harm Shutterstock's reputation and the goodwill associated with Shutterstock's Word Mark by causing consumers to associate

///

Shutterstock with a competing business, ehutterstock.com, which claims to offer stock imagery.

41.     Defendants do not use the Shutterstock Word Mark for a bona fide offering of goods and/or services.  Rather, Defendants engage in their typosquatter scheme and use the Typosquatter Domains for commercial gain, and do not make a legitimate noncommercial or fair use of the Shutterstock Word Mark.  Instead, Defendants intend to capitalize on Shutterstock's Word Mark to drive traffic to the Pornography Websites.

42.     On information and belief, Defendants registered or acquired the Typosquatter Domains knowing they were identical or confusingly similar to the distinctive and famous Shutterstock Word Mark.

43.     Defendants' conduct has caused irreparable and incalculable harm and injury to Shutterstock and, unless enjoined, will cause further irreparable and incalculable injury for which Shutterstock has no adequate remedy at law.

44.     Defendants' conduct constitutes a knowing and willful violation of Shutterstock's rights under 15 U.S.C. § 1125(d).

45.     As a result of Defendants' actions as alleged above, Shutterstock is entitled to injunctive relief against Defendants prohibiting them from registering or owning any other domains that incorporate or otherwise infringe Shutterstock's Word Mark (including without limitation by typosquatting).

46.     As a result of Defendants' actions as alleged above, Shutterstock is also entitled to all other remedies available under the Lanham Act, including, but not limited to, cancellation of Defendants' rights in their Typosquatter Domains and/or transfer of those Typosquatter Domain names to Shutterstock, compensatory and consequential damages in an amount to be proven at trial, statutory penalties, disgorgement of Defendants' profits, and reasonable costs and attorneys' fees.

///

///

///

### *SECOND CLAIM FOR RELIEF*

### **TRADEMARK INFRINGEMENT**

### **(15 U.S.C.  § 1114)**

47.    Shutterstock realleges and incorporates by reference each and every allegation above as if fully set forth herein.

48.    Defendants and Shutterstock offer their services through the same channel of trade, the Internet.

49.    Defendants have stated that they intend to offer stock photo licensing services similar to those offered by Shutterstock.

50.    In connection with their typosquatter schemes and their ownership and use of the Typosquatter Domains, Defendants use Shutterstock's Word Mark and words, terms, names, symbols, and devices that are substantially similar to Shutterstock's Word Mark, in commerce, for commercial purposes, and in connection with the advertising, distribution, and sale of goods and services.

51.    Defendants' use of the Typosquatter Domains is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of Defendants and Defendants' Websites with Shutterstock.

52.    Defendants' use of the Typosquatter Domains is likely to cause confusion, or to cause mistake, or to deceive as to whether Shutterstock is the source of Defendants' goods, services, and commercial activities, and as to whether Shutterstock approves and sponsors Defendants' goods, services, and commercial activities.

53.    Because of the likelihood of confusion caused by Defendants' conduct, any defects or faults in Defendants' Websites and commercial activities injure Shutterstock's reputation and the fame and goodwill associated with Shutterstock and Shutterstock's Word Mark.

54.    Defendants engage in the conduct described in this Complaint without Shutterstock's consent or authorization.

///

55.     Defendants engage in the conduct described in this Complaint with knowledge of the fame and goodwill associated with Shutterstock and Shutterstock's marks and with the intent to trade off that fame and goodwill.

56.     On information and belief, Defendants have induced and encouraged others to engage in the same conduct or substantially similar conduct and, in addition or in the alternative, have provided services or consideration to others with knowledge or reason to know that they were engaged in infringing conduct.

57.     Defendants' conduct has caused irreparable and incalculable harm and injury to Shutterstock and, unless enjoined, will cause further irreparable and incalculable injury for which Shutterstock has no adequate remedy at law.

58.     Defendants' conduct constitutes a knowing and willful violation of Shutterstock's rights under 15 U.S.C. § 1114.

59.     Defendants' conduct is deliberate, willful, fraudulent, and without any extenuating circumstances, and is an exceptional case within the meaning of  15 U.S.C. § 1117.

60.     Shutterstock is entitled to injunctive relief against Defendants, as well as all other remedies available under the Lanham Act, including, but not limited to, damages in an amount to be proven at trial, statutory penalties, disgorgement of Defendants' profits, and costs and attorneys' fees.

### THIRD CLAIM FOR RELIEF

### FALSE DESIGNATION OF ORIGIN AND

### UNFAIR COMPETITION

### (15 U.S.C.  § 1125(e))

61.     Shutterstock realleges and incorporates by reference each and every allegation above as if fully set forth herein.

62.     Defendants' use of the Typosquatter Domains as alleged above is likely to cause confusion to the general purchasing public.

///

63.     By infringing Shutterstock's Word Mark as alleged above, Defendants misrepresent and falsely describe to the general pubic the origin and source of their stock content licensing and pornographic websites and the explicit pornographic services the Pornography Websites offer for sale, and creates a likelihood of confusion by ultimate purchasers as to both the source and sponsorship of such services.

64.     Defendants' unlawful, unauthorized and unlicensed actions as alleged above creates express and implied misrepresentations that the Typosquatter Domains, the stock content licensing services offered on the ehutterstock Typosquatter Domain and the pornographic services offered for sale on the Pornography Websites to which the remaining Typosquatter Domains resolve were created, authorized or approved by Shutterstock, all to Defendants' profit and Shutterstock's great damage and injury.

65.     Defendants' aforesaid acts are a knowing and willful violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), in that Defendants' use of Shutterstock's Word Mark, in connection with Defendants' goods and services in interstate commerce, constitutes a false designation of origin and unfair competition.

66.     Shutterstock has no adequate remedy at law and, if Defendants' activities are not enjoined, Shutterstock will continue to suffer irreparable harm and injury to its goodwill and reputation.

67.     Defendants' conduct is deliberate, willful, fraudulent, and without any extenuating circumstances, and is an exceptional case within the meaning of 15 U.S.C. § 1117.

68.     Shutterstock is also entitled to as all other remedies available under the Lanham Act, including, but not limited to, damages in an amount to be proven at trial, statutory penalties, disgorgement of Defendants' profits, and costs and attorneys' fees.

///
///
///
///

*FOURTH CLAIM FOR RELIEF*

**TRADEMARK DILUTION**

**15 U.S.C. § 1125(c)**

69.     Shutterstock realleges and incorporates by reference each and every allegation above as if fully set forth herein.

70.     Shutterstock's Word Mark and other marks are famous as a result of enormous publicity and Shutterstock's strong and loyal user base, and are widely recognized by the general public of the United States as a designation of Shutterstock's services.

71.     Shutterstock's Word Mark became famous before Defendants registered the Typosquatter Domains and began operating their typosquatter schemes.

72.     In connection with their Typosquatter Domains, Defendants use and display words, terms, names, symbols, and devices that are substantially similar to Shutterstock's Word Mark, in commerce, for commercial purposes, and in connection with the advertising, distribution, and sale of goods and services.

73.     Defendants' conduct causes dilution by blurring of Shutterstock's Word Marks within the meaning of 15 U.S.C. § 1125(c)(2)(B), because those schemes are likely to cause an association with Shutterstock arising from the similarity of the marks that impairs the distinctiveness of Shutterstock's Word Mark and weakens the connection in the public's mind between Shutterstock's Word Mark and Shutterstock's services.

74.     Defendants' typosquatter schemes and use of the Typosquatter Domains also cause dilution by tarnishment of Shutterstock's Word Mark within the meaning of  15 U.S.C. § 1125(c)(2)(C), because those schemes cause consumers to associate Shutterstock with the negative qualities of Defendants' Websites, including, but not limited to, the extreme pornographic content on Defendants' Websites, confusing and deceptive manner in which Defendants' Websites generate Internet traffic, the misleading nature of the commercial activities carried on at Defendants' Websites, and the shoddy design of Defendants' Websites. That association harms Shutterstock's reputation.

75.     Defendants intend to create an association with Shutterstock's Word Mark and to trade on the widespread recognition of Shutterstock's Word Mark by using marks that are substantially similar to Shutterstock's Word Mark.

76.     Defendants' unauthorized use of words, terms, and names that are substantially similar to Shutterstock's Word Mark was achieved with notice and full knowledge that such use was not authorized or licensed by Shutterstock. On information and belief, Defendants willfully intended to harm and trade on the recognition of Shutterstock's Word Mark.

77.     Defendants' conduct has caused irreparable and incalculable harm and injury to Shutterstock and, unless enjoined, will cause further irreparable and incalculable injury for which Shutterstock has no adequate remedy at law.

78.     Defendants' conduct constitutes a knowing and willful violation of Shutterstock's rights under 15 U.S.C. § 1125(c).

79.     Defendants' conduct is deliberate, willful, fraudulent, and without any extenuating circumstances, and is an exceptional case within the meaning of 15 U.S.C. § 1117.

80.     Shutterstock is entitled to injunctive relief against Defendants, as well as all other remedies available under the Lanham Act, including, but not limited to, damages in an amount to be proven at trial, statutory penalties, disgorgement of Defendants' profits, and costs and attorneys' fees.

### FIFTH CLAIM FOR RELIEF

### COMMON LAW TRADEMARK AND TRADE NAME INFRINGEMENT

81.     Shutterstock realleges and incorporates by reference each and every allegation above as if fully set forth herein.

82.     Shutterstock re-alleges and incorporates by reference each and every allegation contained in the preceding paragraphs of this Complaint.

83.     Shutterstock has built up valuable goodwill in the Shutterstock trademarks and trade names, including without limitation the Shutterstock Word Mark.

84.     With full knowledge of the fame of the Shutterstock Word Mark, Defendants have traded, and continue to trade, on the goodwill associated with that trademark and trade name, and mislead the public into assuming a connection between Defendants' Typosquatter Domains and Shutterstock.

85.     Defendants' acts of trademark and trade name infringement cause confusion and, mislead and deceive the pubic as to the source of Defendants' Typosquatter Domains, permit Defendants to pass off the Typosquatter Domains as Shutterstock's, and falsely suggest a connection between Defendants and Shutterstock and, unless restrained by this Court, will continue to do so, in violation of the common law of the State of California, and to the detriment of Shutterstock and the unjust enrichment of Defendants.

86.     Defendants' acts of trademark and trade name infringement have caused and will continue to cause Shutterstock irreparable harm unless restrained by this Court.

87.     Shutterstock has no adequate remedy at law.

### SIXTH CLAIM FOR RELIEF

### CALIFORNIA STATE LAW TRADEMARK DILUTION

### CALIFORNIA BUSINESS AND PROFESSIONS CODE § 14335

88.     Shutterstock realleges and incorporates by reference each and every allegation above as if fully set forth herein.

89.     Defendants' acts have caused damage to Shutterstock by tarnishing Shutterstock's valuable reputation and diluting or blurring the distinctiveness of the famous Shutterstock Word Mark in violation of California Business and Professions Code § 14335, and will continue to tarnish and destroy the value of the Shutterstock Word Mark unless enjoined by this Court.

90.     Shutterstock has no adequate remedy at law.

///

///

///

///

### SEVENTH CLAIM FOR RELIEF

### CALIFORNIA STATE LAW UNFAIR COMPETITION

### CALIFORNIA BUSINESS AND PROFESSIONS CODE §§ 17200 *ET SEQ.*

91.     Shutterstock re-alleges and incorporates by reference each and every allegation contained in the preceding paragraphs of this Complaint.

92.     The aforesaid acts by Defendants are likely to cause injury to Shutterstock's reputation and result in Defendants unfairly competing with Shutterstock in violation of California Business and Profession Code § 17200 *et seq*. (the "UCL").

93.     Defendants' actions as alleged above violate the "unfair" prong of the UCL because (a) any utility of such actions is outweighed by the gravity of the harm they cause to Shutterstock, (b) such actions are immoral, unethical, oppressive, unscrupulous and substantially injurious to consumers, and (c) such actions constitute incipient violations of state and federal antitrust laws.

94.     Defendants' actions as alleged above violate the "fraudulent" prong of the UCL because they are likely to mislead and confuse a statistically significant percentage of reasonable consumers.

95.     Defendants' actions as alleged above violate the "unlawful" prong of the UCL because those same actions also constitute violations of the state and federal statutes set forth above.

96.     Defendants' conduct has injured Shutterstock, and unless enjoined, will continue to cause great, immediate and irreparable injury to Shutterstock.

97.     Shutterstock is without an adequate remedy of law.

98.     Shutterstock is therefore entitled to injunctive relief and an order for restitutionary disgorgement of all of Defendants' ill-gotten gains pursuant to California Business and Professions Code § 17203.

///

///

///

**WHEREFORE**, Shutterstock demands judgment and prays for the following relief:

1.     That Defendants, their officers, agents, servants, employees, attorneys, confederates, and all persons acting for, with, by, through or under them be preliminarily enjoined and restrained, at first during the pendency of this action and, thereafter, permanently:

      a.     from using in any manner (including without limitation in any website domain or Uniform Resource Locator) the Shutterstock Trademarks, alone or in combination with any word or words which so resemble the Shutterstock Trademarks as to be likely to cause confusion, deception, or mistake on or in connection with the advertising, offering for sale, or sale of any product or service not Shutterstock's, or not authorized by Shutterstock to be sold in connection with the Shutterstock Trademarks;

      b.     from passing off, inducing, or enabling others to sell or pass off any product as and for products produced by Shutterstock, not Shutterstock's, or not produced under the control and supervision of Shutterstock and approved by Shutterstock for sale under the Shutterstock Trademarks;

      c.     from committing any acts calculated to cause purchasers to believe that Defendants' products or services are those sold or offered under the control and supervision of Shutterstock, or sponsored or approved by, or connected with, or guaranteed by, or produced under the control and supervision of Shutterstock;

      d.     from further diluting and infringing the Shutterstock Trademarks and damaging Shutterstock's goodwill;

      e.     from otherwise competing unfairly with Shutterstock in any manner;

*///*

COMPLAINT

f.   from registering any further typosquatting domains that infringe upon the Shutterstock Trademarks;

g.   from interfering in any way with Shutterstock's business; and

h.   from engaging in any unlawful, misleading, deceptive, or malicious activities directed at or relating to Shutterstock.

2.   That Defendants account for and pay over to Shutterstock profits realized by Defendants by reason of Defendants' unlawful acts herein alleged.

3.   On all claims except for the claim under the UCL, that Shutterstock be awarded actual damages in an amount to be proven at trial.

4.   That the Typosquatter Domains be transferred to Shutterstock;

5.   That Shutterstock be awarded reasonable attorneys fees and costs and have such other and further relief as the Court may deem equitable including, but not limited to, any relief set forth under Sections 34-39 of the 1946 Trademark Act and/or C.G.S.A. §§ 35-11(i), 42-110(a) *et seq.*, 42-110(b) *et seq.*

6.   That Defendants be ordered to pay pre- and post-judgment interest to Shutterstock.

7.   Such other and further relief as this Court may deem just and proper.


DATED:  April 11, 2014                    LOBB & CLIFF, LLP


                                          By:   /s/
                                             Gregory A. Nylen
                                             Attorneys for Plaintiff SHUTTERSTOCK, INC.

1

## **DEMAND FOR JURY TRIAL**

2        Pursuant to Federal Rule 38(b), Shutterstock hereby demands a jury trial on all

3    issues so triable that are raised by this Complaint.

4

5    DATED:  April 11, 2014                    LOBB & CLIFF, LLP

6

7                                            By:   /s/_____

8                                                Gregory A. Nylen
                                                 Attorneys for Plaintiff SHUTTERSTOCK, INC.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**COMPLAINT**