**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| SHUTTERSTOCK, INC., A DELAWARE CORPORATION,<br><br>　　　　　　　　　　Plaintiff,<br><br>vs.<br><br>NORBERT PIKULSKI, an individual dba shutterst9ck.com, shjtterstock.com, ehutterstock.com, zhutterstock.com, whutterstock.com, shutterstpck.com, sh7tterstock.com, and shutterst0ck.com; DOES 1-10,<br><br>　　　　　　　　　　Defendants. | CASE NO. 14cv0869 WQH (NLS)<br><br>**ORDER** |

HAYES, Judge:

　　The matter before the Court is the Motion for Entry of Default Judgment against Defendant Norbert Pikulski, filed by Plaintiff Shutterstock, Inc. ("Shutterstock"). (ECF No. 16).

**I.　Background**

　　On April 11, 2014, Plaintiff initiated this action by filing a Complaint in this Court against Defendant Norbert Pikulski. (ECF No. 1).

　　On April 16, 2014, Plaintiff filed an Ex Parte Application for a Temporary Restraining Order and Order to Show Cause Regarding a Preliminary Injunction ("Application for TRO"). (ECF No. 5). On May 22, 2014, the Court denied Plaintiff's

Application for TRO, finding that Plaintiff had failed to meet its burden of demonstrating that irreparable injury was likely in the absence of preliminary injunctive relief. (ECF No. 13).

On June 4, 2014, Plaintiff filed a request for entry of default against Defendant. (ECF No. 14). On June 6, 2014, the Clerk of the Court entered default. (ECF No. 15). On July 7, 2014, Plaintiff filed a Motion for Entry of Default Judgment against Defendant. (ECF No. 16). On July 10, 2014, the Court ordered that Defendant had until July 28, 2014 to respond to the Motion for Default Judgment. (ECF. No. 18). To date, Defendant has not filed a response, or otherwise responded or appeared in this case.

## II.   Allegations of the Complaint

Shutterstock is a "publicly traded ... innovative technology company ... [that] connect[s] creative professionals with the best photos, vectors, illustrations and video from thousands of contributors around the world." (ECF No. 1 ¶ 9). Shutterstock owns the federally and internationally registered SHUTTERSTOCK Work Mark (U.S. Registration No. 3084900), "for use in the fields of electronic and print publishing, graphic design, advertising, product packaging and interactive multimedia." *Id.* ¶ 10. "Shutterstock also owns a number of related domain names, including, *e.g.*, shutterstock.com, shutterstock.biz, shutterstock.fr, shutterstock.jp, shutterstock.hk, shutterstock.info." *Id*.

Since 2004, Plaintiff has been using the SHUTTERSTOCK Word Mark "continuously in interstate, intrastate, and foreign commerce, including commerce in the State of California...." *Id.* ¶ 12. "The Shutterstock Work Mark is world famous and known to artists, photographers, designers, producers, editors and other creators and consumers of photographic images, illustrations, vectors, and videos throughout the world." *Id.* ¶ 11. "Shutterstock has invested substantial sums of money and resources to develop the Shutterstock Word Mark" and "has spent millions of dollars advertising the brand." *Id.* ¶¶ 11, 13. "Shutterstock exercises quality control over the use of the

Shutterstock Word Mark, and devotes significant resources to protecting the Shutterstock Word Mark." *Id.* ¶ 14.

In early March 2014, Shutterstock learned the domain name shutterstpck.com was recently registered by Defendant Norbert Pikulski. *Id.* ¶ 20. "Pikulski is a serial typosquatter." *Id.* ¶ 16. "A typosquatter registers an Internet domain name that is confusingly similar to a protected mark." *Id*. "A typosquatter domain may be confusingly similar to a protected mark either because it is an intentionally misspelled version of the protected mark that is similar in sight, sound or meaning (*e.g.* 'shutterstpck.com') or because it incorporates the entire protected mark and adds additional characters to it (*e.g.* 'shutterstocki.com')." *Id*.

Publicly available records list Defendant as the owner of 128 domain names, many of which "appear to typosquat on other well-known trademarks." *Id.* ¶ 17. On March 12, 2014, counsel for Shutterstock sent an email to Defendant demanding that Defendant transfer shutterstpck.com to Plaintiff. *Id.* at ¶ 20. No response was received from Defendant. *Id*. That same day, Defendant registered a second domain name: shutterst0ck.com. *Id*. Between March 15, 2014 and March 18, 2014, Defendant registered four additional domain names: shutterst9ck.com, ehutterstock.com, sh7tterstock.com, and shjtterstock.com. *Id*.

On March 21, 2014, Plaintiff filed a complaint before the National Arbitration Forum (the "NAF Action") relating to shutterstpck.com and shutterst0ck.com, pursuant to the Uniform Domain Name Dispute Resolution Policy adopted by the Internet Corporation for Assigned Names and Numbers. *Id*. "Pikulski responded by posting on the same day on his Twitter account 'Fuck you Shutterstock! Bitches! Hoes skankz!'" *Id*. Defendant registered two additional domain names: whutterstock.com and zhutterstock.com, on March 23, 2014. *Id*.

As recent as April 9, 2014, "Pikulski is the listed owner of ... shutterst0ck.com, shutterst9ck.com, shutterstpck.com, ehutterstock.com, zhutterstock.com, whutterstock.com and, sh7tterstock.com, (collectively, the 'Typosquatter Domains')."

*Id.* ¶ 17. Defendant knew the Typosquatter Domains "were identical or confusingly similar to the distinctive and famous Shutterstock Word Mark." *Id.* ¶ 42. Defendant registered the Typosquatter Domains "with a bad faith intent to profit from the fame and goodwill associated with Shutterstock and Shutterstock's Word Mark." *Id.* ¶ 36. Six of the eight Typosquatter Domains "resolve" to googpussy.com. *Id.* at ¶ 18. The Typosquatter Domain shutterstpck.com resolves to ehhun.com. *Id.* Pikulski is the registered owner of googpussy.com and ehhun.com, "pornographic websites offering extremely graphic and lurid videos of individuals engaged in explicit sexual activities." *Id.* The Pornography Websites host advertisements for paid pornography websites and services, such as www.wankz.com, which offers "the best streaming porn" for a subscription fee of $29.95 per month. *Id.* ¶ 19. Defendant intended to "capitalize on Shutterstock's Word Mark to drive traffic to the Pornography Websites." *Id.* ¶ 41.

On April 9, 2014, Defendant sent an email to Plaintiff indicating that ehutterstock.com specializes in absolutely free images. *Id.* ¶ 22. As of April 9, 2014, the Typoquatter Domain ehutterstock.com displays a title for "Image Categories" against a nude picture and references the "Stock images and networking platform SYMBIOSTOCK." *Id.* "Prior to April 9, 2014, ehutterstock.com ... resolved to the Pornography Websites." *Id.*

Defendant intends "to create an association with Shutterstock's Word Mark and to trade on the widespread recognition of Shutterstock's Word Mark by using marks that are substantially similar to Shutterstock's Word Mark." *Id.* ¶ 75.

"[T]he consuming public has been and is likely to be confused with respect to whether Shutterstock is affiliated, connected, or associated with" Defendant's websites and whether "Shutterstock is the source of Defendant['s] offers, goods, and services" or "sponsors and approves Defendant['s] commercial activities." *Id.* ¶¶ 25, 26. Defendant "misrepresent[s] and falsely describe[s] to the general public the origin and source of [defendant's] stock content licensing[,] and ... explicit pornographic services the Pornography Websites offer for sale...." *Id.* ¶ 63. Defendant's conduct "impairs the

distincitiveness of Shutterstock's Word Mark and weakens the connection in the public's mind between Shutterstock's Word Mark and Shutterstock's services." *Id.* ¶ 73. Defendant's typosquatter "schemes cause consumers to associate Shutterstock with the negative qualities of Defendant['s] Websites...." *Id.*

Plaintiff's Complaint asserts the following claims for relief: (1) four violations of the Trademark Act of 1946 (the "Lanham Act"), 15 U.S.C. §§1051, *et seq.*, specifically (a) federal trademark infringement in violation of 15 U.S.C. § 1114; (b) false designation of origin and unfair competition in violation of 15 U.S.C. § 1125(a); (c) trademark dilution in violation of 15 U.S.C. § 1125(c); and (d) cybersquatting in violation of the Anticybersquatting Consumer Protection Act ("ACPA"), 15 U.S.C. § 1125(d); (2) trademark dilution in violation of California Business & Professions Code § 14335; (3) unfair competition in violation of California Business & Professions Code § 17200; and (4) common law trade mark and trade name infringement. (ECF No. 1).

Plaintiff requests permanent injunctive relief, disgorgement of Defendant's profits realized by Defendant's unlawful acts, actual damages in an amount to be proven at trial, transfer of the Typosquatter Domains to Plaintiff, reasonable attorneys' fees and costs, pre and post-judgment interest, and any other relief the Court finds just and proper. (ECF No. 1).

**III.   Ruling of the Court**

    **A.   Default Judgment**

Rule 55(a) of the Federal Rules of Civil Procedure requires that the Clerk of the Court enter default "when a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise." Fed. R. Civ. P. 55(a).

Rule 55(b)(2) of the Federal Rules of Civil Procedure provides that the court may grant a default judgment after default has been entered by the Clerk of the Court. Fed. R. Civ. P. 55(b)(2). "The general rule of law is that upon default the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true."

*TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917-18 (9th Cir. 1987) (quotation omitted). The Ninth Circuit has articulated the following factors for courts to consider in determining whether a default judgment should be granted:

> (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

*Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986).

Plaintiff has demonstrated that Defendant was duly served. (ECF No. 7, 11). The docket reflects that Defendant has not filed a responsive pleading. The Clerk of the Court has entered default against Defendant. (ECF No. 15). The factual allegations of the Complaint are sufficient to sustain all of the causes of action alleged in the Complaint. (ECF No. 1). Plaintiff has alleged sufficient facts to establish Defendant registered and used eight typosquatter domain names that are confusingly similar to Shutterstock's famous word mark with a bad faith intent to profit. (ECF No. 1 ¶¶ 35-42). "The ACPA has been interpreted to prohibit 'typosquatting' – that is, registering intentional misspellings of famous trademarks or names." *Verizon California Inc. v. Navigation Catalyst Sys., Inc.*, 568 F. Supp. 2d 1088, 1094 (C.D. Cal. 2008) ("A reasonable interpretation of conduct covered by the phrase "confusingly similar" is the intentional registration of domain names that are misspellings of distinctive or famous names, causing an Internet user who makes a slight spelling or typing error to reach an unintended site.") (citing *Shields v. Zuccarini*, 254 F.3d 476, 484 (3d Cir. 2001)).

In this case, the possibility of prejudice to Plaintiff is high if the Court does not enter default judgment. If Plaintiff is not granted default judgment, it may be without any recourse for recovery. The record reflects that Defendant was sent an email by Plaintiff's counsel demanding transfer of the shutterstpck.com (ECF No. 1, Ex. G); that Defendant was sent another email with the complaint in the NAF action (ECF No. 17 at 81); and that Defendant has been served with the Complaint, the Application for TRO, and the Motion for Default Judgment. (ECF Nos. 8, 16-3). The possibility that

Defendant's default was due to excusable neglect is low. *See Microsoft Corp. v. Lopez*, No. C08-1743, 2009 WL 959219, at *3 (W.D. Wash. Apr. 7, 2009) (finding that possibility of excusable neglect low when "Defendant received notice of Microsoft's intention to pursue civil remedies both through receipt of the cease and desist letter and service of the Complaint"). Although there is a "strong policy ... favoring decision on the merits," *Eitel*, 782 F.2d at 1472, "the mere existence of Fed. R. Civ. P. 55(b) indicates that the seventh *Eitel* factor is not alone dispositive. Defendant's failure to answer Plaintiff's Complaint makes a decision on the merits impractical, if not impossible." *Phillip Morris USA, Inc. v. Castworld Prods.*, 219 F.R.D. 494, 501 (C.D. Cal. 2003) (quotation omitted). The Court has considered the factors articulated in *Eitel* and the Court concludes that Plaintiff is entitled to default judgment against Defendant for all of the causes of action pursuant to Rule 55(b)(2).

**B. Remedies**

Plaintiff seeks maximum statutory damages, transfer of domain names, permanent injunctive relief, attorneys' fees, and costs. (ECF No. 16). Pursuant to Federal Rule of Civil Procedure 54, "[a] default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Fed. R. Civ. P. 54(c).

> Plaintiff is required to prove all damages sought in the complaint. In addition, [a] judgment by default shall not be different in kind [or] exceed in amount that prayed for in the [complaint]. In determining damages, a court can rely on the declarations submitted by the plaintiff or order a full evidentiary hearing.... If proximate cause is properly alleged in the complaint, it is admitted upon default. Injury is established and plaintiff need prove only that the compensation sought relates to the damages that naturally flow from the injuries pled.

*Phillip Morris*, 219 F.R.D. at 498. (citations omitted). Furthermore, allegations in the complaint as to the amount of damages are not entitled to an assumption of truth. *See TeleVideo*, 826 F.2d at 917-18.

**i. Statutory Damages**

Plaintiff requests maximum statutory damages of $800,000.00 ($100,000 per registered domain). (ECF No. 16). A successful plaintiff in a cybersquatting case may elect to recover statutory damages in lieu of actual damages. *See* 15 U.S.C. § 1117(d).

Statutory damages range from an "amount of not less than $1,000 and not more than $100,000 per domain name, as the court considers just." *Id*. The statutory damages provisions of the ACPA are intended to provide restitution of profit and reparation for injury, and to discourage wrongful conduct. *E & J Gallo Winery v. Spider Webs Limited*, 286 F.3d 270, 278 (5th Cir. 2002) ("The statutory damages provisions in the ACPA, which is relatively new, are akin to the statutory damages provisions of the copyright laws. In copyright law, the Supreme Court has said that the 'statutory [damages] rule, formulated after long experience, not merely compels restitution of profit and reparation for injury but also is designed to discourage wrongful conduct.'") (quoting *F.W. Woolworth Co. v. Contemporary Arts, Inc*., 344 U.S. 228 (1952)).

"To determine a reasonable amount of statutory damages, 'courts generally consider a number of factors ... including the egregiousness or willfulness of the defendant's cybersquatting, the defendant's use of false contact information to conceal its infringing activities, the defendant's status as a 'serial' cybersquatter ... and other behavior by the defendant evidencing an attitude of contempt towards the court of the proceedings." *Wecosign, Inc. v. IFG Holdings, Inc.*, 845 F. Supp. 2d 1072, 1086 (C.D. Cal. 2012) (citing *Verizon Cal., Inc. v. Onlinenic, Inc.*, No. C 08-2832 JF (RS), 2009 WL 2706393, at *3 (N.D. Cal. Aug. 25, 2009)).

The factual allegations of the Complaint sufficiently allege the existence of eight cybersquatting violations. (ECF No. 1 ¶¶ 47-68; 69-75). Plaintiff sufficiently alleged that Defendant's conduct was willful and that Defendant is a serial typosquatter. (ECF No. 1 ¶¶ 10, 20, 75-79 ). Plaintiff submitted a list of additional domain names owned by Defendant. These domain names appear to typosquat on other famous marks not at issue in this case. *Id.* ¶ 17. Prior to March 12, 2014, Defendant was the registered owner of one domain name confusingly similar to shutterstock.com. *Id.* ¶ 16. On March 12, 2014, counsel for Shutterstock attempted to resolve the infringement with Defendant. *Id.* Defendant responded by registering five additional confusingly similar domain names between March 12, 2014 and March 18, 2014. *Id.* On March 21, 2014,

1  Plaintiff again attempted to resolve the infringement by filing the NAF Action. *Id.*
2  Defendant responded on his Twitter account, saying, "Fuck you Shutterstock! Bitches!
3  Hoes skankz!" *Id.* And again, Defendant register two additional confusingly similar
4  domain names. *Id.*

5       Plaintiff has alleged facts sufficient to evidence Defendant's bad faith intent.
6  However, bad faith conduct may differ in cybersquatting cases "in terms of degrees of
7  maliciousness and wrongdoing." *Facebook, Inc. v. Banana Ads LLC*, No. CV
8  11-03619-YGR (KAW), 2013 WL 1873289, at *15 (N.D. Cal. Apr. 30, 2013) (devising
9  an in-depth formula to calculate damages based on the defendants' level of
10 maliciousness and wrongdoing); *see also Haas Automation, Inc. v. Denny,* No.
11 2:12-CV-04779 (CBM) (PLAx), 2013 WL 6502876, at *5-8 (C.D. Cal. Dec. 4, 2013)
12 (increasing statutory damages per domain name as the defendant's notice of wrongful
13 conduct increased and defendant continued to register domain names before, during,
14 and after litigation); *Carlsbad v. Shah*, 850 F. Supp. 2d 1087, 1117 (S.D. Cal. 2012)
15 (concluding that $50,000 in statutory damages was warranted for each domain named
16 registered after a summary judgement order was issued that established the plaintiff as
17 the owner of the marks). "Typosquatting is generally regarded as less malicious than
18 true cybersquatting, where the domain name is spelled correctly." *Facebook, Inc.*, 2013
19 WL 1873289, at *16 (citations omitted) (finding domains containing the
20 correctly-spelled mark were more malicious than those which misspell the mark)
21 (awarding an additional $5,000 for each domain name with a correctly spelled mark).

22      Based on the record in this case, the Court concludes that a total of $23,500.00
23 is an appropriate statutory damages award pursuant to 15 U.S.C. § 1117(d). None of
24 the Typosquatter Domains contained the Shutterstock Word Mark in its correctly
25 spelled form. On the other hand, the infringement by Defendant is continuing and in
26 bad faith. Seven of the eight cyber-squatted domains "currently resolve to the domain
27 googpussy.com," and the eighth, ehutterstock.com, "display[s] a title for 'Image
28 Categories' against a nude picture; the bottom of the page references the 'Stock image

1  and networking platform SYMBIOSTOCK...." (ECF No. 17 at 5, 8). For domain
2  names registered before March 12, 2014, prior to Plaintiff's first attempt to resolve the
3  infringement, the Court concludes that $1,000.00 per domain name is an appropriate
4  award. For domain names registered after March 12, 2014, when Plaintiff's counsel
5  made its first attempt to resolve the infringement, up until Plaintiff filed the NAF
6  Action, on March 21, 2014, the Court concludes that $2,500.00 per domain name is an
7  appropriate award. At this time, Defendant was aware of Plaintiff's ownership of the
8  Shutterstock trademarks and acted in disregard of Plaintiff's rights. For domain names
9  registered any date after commencement of the NAF Action, the Court concludes that
10 $5,000.00 is an appropriate award. At this time, Defendant was aware of Plaintiff's
11 rights. Based upon Defendant's contemporaneous online posting cursing at Plaintiff,
12 malice and bad faith can be inferred. Plaintiff's request for statutory damages is granted
13 as follows:

| | | |
|---|---|---|
| shutterstpck.com | 3/4/2014 | $1,000.00 |
| shutterst0ck.com | 3/12/2014 | $2,500.00 |
| ehutterstock.com | 3/15/2014 | $2,500.00 |
| shutterst9ck.com | 3/15/2014 | $2,500.00 |
| sh7tterstock.com | 3/16/2014 | $2,500.00 |
| shjtterstock.com | 3/18/2014 | $2,500.00 |
| whutterstock.com | 3/23/2014 | $5,000.00 |
| zhutterstock.com | 3/23/2014 | $5,000.00 |

### ii. Transfer of Domain Names

Plaintiff seeks an order "(b) requiring the Enjoined Parties to immediately transfer the following domain names to Shutterstock: shutterst9ck.com, shjtterstock.com, ehutterstock.com, zhutterstock.com, whutterstock.com, shutterstpck.com, sh7tterstock.com, and shutterst0ck.com (the "Typosquatter Domains"); and (c) requiring any domain registrars, including without limitation GoDaddy, to cooperate with Shutterstock in effectuating such transfer...." (ECF No.

16 at 2).

"In any civil action involving the registration, trafficking, or use of a domain name under this paragraph, a court may order the forfeiture or cancellation of the domain name or the transfer of the domain name to the owner of the mark." 15 U.S.C. 1125(d)(1)(C). "Transfer of the domain names to the owner of the mark is expressly authorized under the ACPA." *Carlsbad*, 850 F. Supp. 2d at 1115.

As detailed above, Plaintiff has alleged sufficient facts in the Complaint to satisfy the ACPA claim. (ECF No. 1). Plaintiff's request for transfer of shutterst9ck.com, shjtterstock.com, ehutterstock.com, zhutterstock.com, whutterstock.com, shutterstpck.com, sh7tterstock.com, and shutterst0ck.com to Plaintiff is granted.

### iii. Permanent Injunction

Plaintiff seeks a permanent injunction that prohibits:

> Pikulski, his agents, servants, employees, attorneys, and/or, pursuant to Federal Rule of Civil Procedure 65(d)(2)(A), any other person in active concert or participation with Pikulski (collectively, the "Enjoined Parties"), from registering, transferring, owning any interest in, and/or controlling any Internet domains that are confusingly similar (either through typosquatting by replacing characters or otherwise) to any of Shutterstock's trademarks, including without limitations the SHUTTERSTOCK word mark (U.S. Registration No. 3,084,900) (the "Word Mark"), Shutterstock design marks (U.S. Registration Nos. 4286040, 4286055, 4286051 and 4286050), and/or the federally registered marks for Shutterstock's brands OFFSET, SKILLFEED and BIGSTOCK (see, e.g., U.S. Reg Nos. 4350110, 4442589, 4446512, 4504338, and 3924779)....

(ECF No. 16 at 2). Under the Lanham Act, a district court has the "power to grant injunctions, according to the principles of equity and upon such terms as the court deems reasonable, to prevent the violation of any right of the registrant of a mark ... or to prevent a violation under subsection (a), (c), or (d) of section 1125...." 15 U.S.C. §§ 1116(a); *see also Interstellar Starship Servs., Ltd. v. Epix, Inc.*, 304 F.3d 936, 948 (9th Cir. 2002); *Levi Strauss & Co. v. Shilon*, 121 F.3d 1309, 1314 (9th Cir. 1997). "According to well-established principles of equity, a plaintiff seeking a permanent injunction must satisfy a four-factor test before a court may grant such relief." *eBay Inc. v. MercExchange, LLC*, 547 U.S. 388, 391 (2006).

"Actual irreparable harm must be demonstrated to obtain a permanent injunction in a trademark infringement action." *Herb Reed Enterprises, LLC v. Florida Entm't Mgmt., Inc.*, 736 F.3d 1239, 1249 (9th Cir. 2013) (citing *Flexible Lifeline Sys. v. Precision Lift, Inc.*, 654 F.3d 989, 998 (9th Cir. 2011) and *Reno Air Racing Ass'n, Inc., v. McCord*, 452 F.3d 1126, 1137-38 (9th Cir. 2006)). A plaintiff must demonstrate: "(1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *eBay Inc. v. MerExcharge, L.L.C.*, 547 U.S. 388, 391 (2006) (citations omitted).

On May 22, 2014, the Court denied Plaintiff's preliminary injunction, holding "that Plaintiff has failed to demonstrate that it is likely to suffer irreparable harm in the absence of preliminary relief...." (ECF No. 13) (citations omitted). The Complaint alleges only the possibility of a future injury if Defendant continues to register typosquatter domains similar to the domains at issue in this case. Plaintiff offers no additional evidence to demonstrate an irreparable harm.

In *Herb Reed*, the Ninth Circuit explained, "[i]n *eBay,* the [Supreme Court] held that the traditional four-factor test employed by courts of equity ... 'has consistently rejected ... a rule that an injunction automatically follows a determination that a copyright has been infringed, and emphasized that a departure from the traditional principles of equity 'should not be lightly implied.' The same principle applies to trademark infringement under the Lanham Act.... 'Nothing ... in the Lanham Act indicates that Congress intended a departure for trademark infringement cases.'" *Herb Reed*, 736 F.3d at 1249 (citing *eBay*, 547 U.S. 388 at 391-93).

Plaintiff contends that their request for permanent injunctive relief under the ACPA should yield a different result than under the Lanham Act because the Ninth Circuit has not yet ruled on whether a presumption of irreparable injury applies to

1 ACPA claims. There is no authority supporting a presumption of irreparable harm for
2 valid ACPA claims. The Ninth Circuit specifically rejected the same presumption for
3 valid trademark infringement claims under the related Lanham Act. *See id.*; *see also*
4 *Bosley Med. Inst., Inc. v. Kremer*, 403 F.3d 672, 680 (9th Cir. 2005) (noting that
5 Congress passed the ACPA as an amendment to the Lanham Act). Under both Acts, the
6 same provision, 15 U.S.C. section 1116, authorizes the issuance of a permanent
7 injunction to protect the mark owner's rights. 15 U.S.C. §1116. In light of the Ninth
8 Circuit's rejection of a presumption of irreparable harm in trademark cases, the Court
9 has no authority to apply such a presumption in ACPA cases.

10 Plaintiff contends that it will suffer irreparable injury in the absence of the
11 issuance of a preliminary injunction because Defendant continued to register domain
12 names after being on notice of the NAF Action. Plaintiff has offered no evidence of
13 Defendant registering any additional domains after March 23, 2014. Plaintiff has not
14 established that it has suffered an irreparable injury. Furthermore, Plaintiff has not
15 established that transfer of the eight domain names at issue would be an inadequate
16 legal remedy.

17 The Court finds that Plaintiff has failed to satisfy the requirements for obtaining
18 a permanent injunction. Plaintiff's request for a permanent injunction against Defendant
19 is denied.

20 **iv.   Attorneys' Fees and Costs**

21 Plaintiff requests a combined award of attorneys' fees and costs in the amount of
22 $14,392.00. (ECF No. 16). The Lanham Act and the ACPA gives the Court discretion
23 to award reasonable attorneys' fees in "exceptional cases." 15 U.S.C. § 1117(a).
24 "While the term 'exceptional' is not defined in the statute, attorneys' fees are available
25 in infringement cases where the acts of infringement can be characterized as malicious,
26 fraudulent, deliberate, or willful." *Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007,
27 1023 (9th Cir. 2002). In *Rio Properties*, the Court of Appeals for the Ninth Circuit held
28 that an award of attorneys' fees under the Lanham Act was appropriate because, "by

entry of default judgment, the district court determined, as alleged in RIO's complaint, that [defendant]'s acts were committed knowingly, maliciously, and oppressively, and with an intent to injure RIO." *Id.*; *see also Derek Andrew, Inc. v. Poof Apparel Corp.*, 528 F.3d 696, 702 (9th Cir. 2008) ("The district court entered default and [defendant] concedes that its default occurred with respect to a complaint that pled wilfulness. All factual allegations in the complaint are deemed true, including the allegation of [defendant]'s willful infringement of [plaintiff]'s trademarks. This default sufficiently establishes [plaintiff]'s entitlement to attorneys' fees under the Lanham Act."). The prevailing plaintiff in a Lanham Act and APCA case is entitled to recover "the costs of the action." 15 U.S.C. § 1117(a).

Plaintiff has adequately pled deliberate, malicious, fraudulent, and willful conduct sufficient to establish an "exceptional case." (ECF No. 1 ¶¶ 20, 58, 59, 65, 67, 76, 78, 79). Defendant has defaulted in this case. The Court concludes that Plaintiff is entitled to reasonable attorneys' fees pursuant to the Lanham Act and the ACPA.

Plaintiff contends $14,392.00 in attorneys' fees and costs is reasonable. Plaintiff submitted the declaration of, Gregory A. Nylen, the Attorney of Record, who states:

> My rate for attorney time spent on this matter is $385.00 per hour. Michelle Chapel, a paralegal in my office, has been working with me on this case, and her rate is $160.00 per hour. To date, Shutterstock has incurred attorney and paralegal fees and costs in this matter totaling $12,392.00.... The fees and costs incurred ... are reasonable ... and are broken down as follows: ... preparation and filing of the Complaint ... $3,514.00; ... preparation and filing of Shutterstock's Application for [TRO] ... $5,191.25; ... preparation and filing of Request for Entry of Default Judgment ... $1,107.25; ... preparation and filing of Motion for Entry of Default Judgment, up to and including June 30, 2014, are $2,579.00.... I project that Shutterstock will incur an additional $2,000.00 in fees and costs from July 1, 2014 through the filing of the Motion.

(Nylen Decl., ECF No. 16-1 ¶ 7). After reviewing Plaintiff's counsel's declaration and the record in this case, the Court concludes that the rate charged, time spent, and totals claimed are reasonable. *See Miller v. L.A. Cnty. Bd. of Educ.*, 827 F.2d 617, 620 (9th Cir. 1987) (explaining that an award of attorneys' fees requires a loadstar figure, "the number of hours reasonable expended on the litigation multiplied by a reasonable

hourly rate," adjusted by the factors laid out in *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975), *cert. denied*, 425 U.S. 951 (1976)) (quoting *Pennsylvania v. Del. Valley Citizens' Council for Clean Air*, 478 U.S. 546, 563 (1986)). Plaintiff's request for attorneys' fees and costs is granted in the amount of $14,392.00.

## IV. Conclusion

IT IS HEREBY ORDERED that Plaintiff Shutterstock, Inc.'s Motion for Entry of Default Judgment (ECF No. 16) is GRANTED. Plaintiff is entitled to default judgment against Defendant Norbert Pikulski as to all claims in the Complaint. Plaintiff is entitled to judgment as follows:

1. An award of $23,500.00 in statutory damages;
2. Transfer of domain names shutterst9ck.com, shjtterstock.com, ehutterstock.com, zhutterstock.com, whutterstock.com, shutterstpck.com, sh7tterstock.com, and shutterst0ck.com;
3. And an award of $14,392.00 in attorneys' fees and costs.

No later than fourteen (14) days from the date this Order is filed, Plaintiff shall file a proposed judgment in accordance with the rulings in this Order and e-mail a copy of the proposed judgement in WordPerfect or Word format to efile_hayes@casd.uscourts.gov.

DATED: November 19, 2014

**WILLIAM Q. HAYES**
United States District Judge